IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO.: 7:16-CV-340-H

| | |
|---|---|
| PRESTON DWIGHT DAVIS; <br><br> Plaintiff, <br><br> v. <br><br> STEPHANIE LEWIS, individually and in her official capacity as the Director of Brunswick County's Operation Services Department, BRYAN HOLLIS, individually and in his official capacity as the plaintiff's direct supervisor, ANN HARDY, individually and in her official capacity as County Manager for Brunswick County, North Carolina, and BRUNSWICK COUNTY, NORTH CAROLINA, <br><br> Defendants. | **ORDER** |

This matter is before the court on defendants' motion to dismiss all claims for failure to state a claim upon which relief can be granted, [DE #20]. Plaintiff has responded, [DE #36], and defendants have replied, [DE #40]. This matter is ripe for adjudication.

**BACKGROUND**

The complaint alleges the following facts. Plaintiff was a fifty-seven year old African-American male resident of the Town of Bolivia, Brunswick County, North Carolina, at all times relevant to the complaint. [DE #1 at ¶13]. Plaintiff alleges Defendants Lewis, Hollis, and Hardy were acting as supervisory personnel on behalf of Brunswick County Government's Operation Services Department ("the department"), and under color of state law. Id. at ¶37. Plaintiff alleges violations of his constitutional rights as well as violations of state law surrounding his being selected for drug testing, his subsequent termination and defendants' decision not to rehire him.

Plaintiff began working with Brunswick County's ("the County") department as an Equipment Operator II in 1988. Id. at ¶29. Plaintiff worked with the County's department as an Equipment Operator II for the next eighteen years. Id. At all times relevant to the complaint, plaintiff's supervisors consistently rated his job performance as "meets or exceeds standards." Id. at ¶15. In fact, plaintiff received a 2% merit-based pay raise approximately two weeks before his termination. Id. at ¶¶15, 32.

Several years prior to the events surrounding plaintiff's 2014 termination, on January 10, 2011, plaintiff was charged with Driving While Impaired ("DWI"), and as a result, he was demoted to

2

a Maintenance Assistant I and had his salary cut by $3,500.00. Id. at 40. In a meeting held on January 21, 2011, between Defendant Lewis and plaintiff, Defendant Lewis assured plaintiff that his Equipment Operator II position would remain open for thirty days, in order to provide plaintiff the opportunity to have his Commercial Driver's License ("CDL") reinstated.[1] Id. Eventually, plaintiff was found not guilty of the DWI; however, in a letter from Defendant Lewis dated March 2, 2011, nine days beyond the February 21, 2011 deadline imposed by Defendant Lewis for plaintiff to have his CDL reinstated, Defendant Lewis informed plaintiff he had advertised and hired a white male to fill plaintiff's position. Id. Defendant Lewis refused to restore plaintiff to his previous position or salary. Id.

At some time between 2011 and 2014, plaintiff was reinstated to the position of Equipment Operator II, as that was the position he held when he was terminated. Id. at ¶14. On an unspecified date in 2014, plaintiff was tested for drug use. After plaintiff allegedly tested positive for a controlled substance, plaintiff was terminated on August 15, 2014, by Defendant Lewis, the department's director, for "… Failure in Job-Related Personal Conduct in accordance with Brunswick County Personnel Manual Section II, Policy No. 250, § 11.1.3, 'use or possession of illegal

---

[1] It is unclear from the complaint at what time plaintiff initially acquired a CDL.

narcotics or habit forming drugs.'" Id. at ¶16. The County claimed plaintiff violated the aforementioned policy by allegedly "testing positive for an illegal substance." Id. Plaintiff alleges the County "relied exclusively on Mr. Davis' alleged 'positive' drug screening test as the sole basis for terminating [plaintiff's] employment." Id. at ¶17.

Following plaintiff's termination, plaintiff applied for the position of Equipment Operator II with the department and was denied placement on the following four separate occasions: September 24, 2014; January 25, 2015; June 7, 2015; and finally on September 22, 2015. Id. at ¶33. Defendant Hollis, who had been plaintiff's supervisor, rejected all of plaintiff's applications for the open Equipment Operator II positions, and plaintiff was not given an interview for any of the four open Equipment Operator II positions for which he alleges he was highly qualified. Id. at ¶¶34 and 35. Eventually, Defendants Hollis and Lewis, with Defendant Hardy's approval, selected all white males to fill all four of the open Equipment Operator II positions, who were allegedly objectively less qualified than plaintiff. Id. at ¶¶32, 35, and 39.

When plaintiff met with defendants concerning their refusal to hire him for any of the four open positions as Equipment

Operator II, he was told that he had improperly filled out all four of his job applications. Id. at ¶38.

On October 9, 2014, plaintiff met with Defendant Hardy, the County Manager, to discuss his occupational "blacklisting" by the department and their discriminatory employment practices. Id. at ¶41. During the October 9, 2014 meeting, Defendant Hardy reviewed plaintiff's personnel file and informed him that he was well qualified for an Equipment Operator II position and was eligible for rehire.[2] Id. at ¶42. However, plaintiff alleges Defendant Hardy failed to investigate or take any corrective measures in response to plaintiff's raising his concerns to her.

## COURT'S DISCUSSION

### I. Standard of Review

A federal district court confronted with a motion to dismiss for failure to state a claim should view the allegations of the complaint in the light most favorable to the plaintiff. See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). The intent of Rule 12(b)(6) is to test the sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion "'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"

---

[2] Plaintiff argues in his response to defendants' motion to dismiss that he was designated "ineligible for rehire" by the County. [DE #36 at 7].

5

Id. (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007).

"[A] complaint need not 'make a case' against a defendant or 'forecast evidence sufficient to prove an element' of the claim." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Rule 8 of the Federal Rules of Civil Procedure provides "for simplicity in pleading that intends to give little more than notice to the defendant of the plaintiff's claims and that defers until after discovery any challenge to those claims insofar as they rely on facts." Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007). A complaint is generally sufficient if its "'allegations are detailed and informative enough to enable the defendant to respond.'" Chao, 415 F.3d at 349 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1215 at 193 (3d ed. 2004)) (citing Hodgson v. Virginia Baptist Hosp., Inc., 482 F.2d 821, 824 (4th Cir. 1973)). Thus, a complaint satisfies the Rules if it gives "fair notice" of the claim and "the grounds upon which it rests." Twombly, 550 U.S. at 554-55 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

**II. 42 U.S.C. § 1981 Claim[3] and 42 U.S.C. § 1983 claim**

Section 1983 does not itself confer substantive rights upon a plaintiff. Graham v. Connor, 490 U.S. 386, 394 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979)). It only allows recovery for plaintiffs who are denied federal civil rights by someone "acting under the color of state law." 42 U.S.C. § 1983. Therefore, the first step in a § 1983 action is to identify the underlying right at issue. See Graham, 490 U.S. at 394, aff'd by Cty. of Sacramento v. Lewis, 523 U.S. 833 (1998).

Plaintiff alleges violations of his rights under the First[4], Fourth, Fifth, and Fourteenth Amendments.

**A. Fourth Amendment Claim**

Plaintiff alleges his Fourth Amendment right to be free from unreasonable searches and seizures was violated when he was subjected to a warrantless search, absent individualized suspicion, in the form of a drug test.

The Fourth Amendment provides

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

---

[3] Plaintiff voluntarily withdraws his 42 U.S.C. § 1981 claim as a separate claim and integrates said claim with plaintiff's 42 U.S.C. § 1983 claim. [DE #36 at 14].

[4] To the extent plaintiff only mentions the title of the First Amendment in his response to defendants' motion to dismiss, plaintiff has not sufficiently pled a claim under the First Amendment and this claim is hereby DISMISSED.

7

> searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. A urine drug test is a search. Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 617 (1989). Whether a search is reasonable under the Fourth Amendment is determined by balancing the intrusion upon the individual's Fourth Amendment interests and a legitimate governmental interest. Id. at 619 (quoting Delaware v. Prouse, 440 U.S. 648, 654 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 574 (1976)).

The reasonableness of a warrantless search, absent individualized suspicion, is determined by conducting the above balancing test and finding the privacy interests implicated by the search are minimal and the important governmental interest furthered by the intrusion upon the individual's privacy would be jeopardized by the requirement of individualized suspicion. Id. at 624.

Plaintiff alleges he was selected for a drug test in violation of the Fourth Amendment, without justification and prior to establishing drug testing guidelines or procedural safeguards, while also alleging the department implemented a drug testing program that failed to comply with the North Carolina Controlled Substances Examination Regulation Act ("CSERA"). [DE #1 ¶58].

8

Although defendants contend plaintiff is a commercial driver's license holder subject to regulations which allow for testing such employees randomly without individualized suspicion, defendants have failed to show how the County implemented these regulations and how such policies demonstrate the governmental interest required by the balancing test set forth above. Therefore, finding inadequate support for defendants' arguments in their brief, defendants' motion to dismiss plaintiff's Fourth Amendment claim is hereby DENIED.

### B. Fourteenth Amendment Claims

Plaintiff alleges violations of his Fourteenth Amendment rights to due process and equal protection under the law.

#### i. Procedural Due Process Claim[5] — Property Interest

Plaintiff alleges his procedural due process rights were violated because he was terminated without proper process. Specifically, plaintiff alleges he was denied an opportunity to employ an independent laboratory to conduct statutorily mandated confirmatory retesting; he was not provided written notice of his rights and responsibilities under CSERA; and the department failed

---

[5] As the Fifth Amendment is applicable to the federal government and only applicable to the States by way of the Fourteenth Amendment, plaintiff's allegation of a violation of his due process rights against the defendants is properly construed under the Fourteenth Amendment. See Burrell v. Virginia, 395 F.3d 508, 515 (4th Cir. 2005) (quoting Griffin v. California, 380 U.S. 609, 615 (1965)).

9

to verify the chain of custody and adherence to the required analytical procedures. [DE #1 ¶58].

The Fourteenth Amendment provides in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law … ." U.S. Const. amend. XIV., § 1.

To establish a procedural due process violation, plaintiff must allege a constitutionally protected property interest and deprivation of that interest by state action. "The procedural safeguards encompassed by the due process clause extend to appellant's continued employment only if [he] had a property interest in that employment." Pittman v. Wilson Cty., 839 F.2d 225, 226-27 (4th Cir. 1988) (citing Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972)).[6] North Carolina is an at-will employment state. Knight v. Vernon, 214 F.3d 544, 553 (4th Cir. 2000) (citing Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 493 S.E.2d 420, 422 (1997)). As an "at-will" employee, he did not have a property interest in his employment with the County. Pittman, 839 F.2d at 229. Further, plaintiff has not alleged he had a contract or implied contract with the County. Therefore, he has alleged no property interest in his employment, and his

---

[6] Plaintiff also appears to attempt to state a claim for a deprivation of his liberty interest without due process in violation of the Fourteenth Amendment. [DE #1 at ¶¶ 55, 58]. As defendants do not address this claim in their motion to dismiss and incorporating memorandum, the court does not address this claim.

Fourteenth Amendment claim for deprivation of his property interest without due process is hereby DISMISSED.

ii. Equal Protection Claim

Plaintiff alleges he was denied the right to equal protection under the law under three theories: 1) he was selected on the basis of his race for drug testing; 2) he was terminated on the basis of his race when similarly situated employees were not; and 3) he was not rehired by the department although he was qualified and allegedly less-qualified white males were hired.[7]

"A public employee may bring a claim of employment discrimination under § 1983 and the Equal Protection Clause." Weathersbee v. Baltimore City Fire Dept., 970 F.Supp.2d 418, 429 (D.Md. 2013) (citing Collins v. City of Harker Heights, 503 U.S. 115, 119-120 (1992)). For claims of intentional employment discrimination, the same framework applies whether the claim is brought under Title VII or § 1981 and § 1983. Id. at 430 (citing Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004)).

(1) Racial discrimination in Selection for Drug Test, Resulting in Termination

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others

---

[7] While plaintiff alleges he was also deprived equal protection due to the policies of the County, [DE #1 ¶24], the defendants have not moved to dismiss this claim, and thus it is not before the court.

11

with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Defendants argue plaintiff's claims are not plausible as plaintiff admits he held a CDL and was terminated for a positive drug test. However, as stated supra, defendants have not properly explained the connection between the CDL regulations, the County's drug testing policy, and how others with CDLs (those similarly situated) were drug tested. Therefore, it is impossible for this court to say that plaintiff's claim is facially implausible on this unsupported argument alone. Here, plaintiff has alleged that he was selected for drug testing purposefully based on his race, resulting in his termination. While not detailed, at this stage of the litigation, that is sufficient to state a plausible claim. Therefore, defendants' motion to dismiss plaintiff's Fourteenth Amendment claim under the equal protection clause for race-based selection for a drug test is DENIED.

(2) Termination

To state a claim for race discrimination in his termination, plaintiff should allege facts showing (1) plaintiff was a member of the protected class, (2) he was performing his job satisfactorily, (3) he suffered an adverse employment action and (4) he was treated differently from similarly situated employees

12

outside the protected class. Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

Here, plaintiff has pled facts showing he is a member of the protected class as an African-American; that he was performing his job satisfactorily as he had good performance reviews; that he was subjected to an adverse employment action as he was terminated from his position; and that other county employees were treated differently as the county attorney was able to retire with benefits.

Plaintiff alleges that he, as the department's only African-American male employee, was summarily terminated, by the department's all-white management team without a showing of any substantive connection between his allegedly positive drug test and any injury suffered by the employer, co-workers, or the public at large. Id. at ¶¶17, 25, 32. Additionally, his complaint alleges that subsequent to plaintiff's termination, the attorney for the County was arrested by the County Sheriff's Deputies for possessing marijuana and drug paraphernalia. [DE #1 at ¶26]. The attorney was arrested for actually possessing illegal drugs and drug paraphernalia, and he was permitted by Defendant Hardy to retire with full benefits while plaintiff was terminated for simply failing a drug test. Id. On the allegations contained in the

complaint, the court cannot say that plaintiff's claim is implausible on its face. Therefore, defendants' motion to dismiss plaintiff's Fourteenth Amendment claim under the equal protection clause for race-based termination is DENIED.

The court notes that plaintiff attempts to bring forth additional allegations regarding similarly situated individuals for the first time in response to defendants' motion to dismiss. Should plaintiff wish to amend his complaint to add these additional facts, he may file a motion with the court.

(3) <u>Failure to Rehire</u>

To state a claim for racial discrimination in failing to rehire, plaintiff should allege facts showing:

> that [he] is a member of the protected class; (2) that the employer had an open position for which [he] applied or sought to apply; (3) that [he] was qualified for the position; and (4) that [he] was rejected under circumstances giving rise to an inference of unlawful discrimination.

<u>McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.</u>, 780 F.3d 582, 584 (4th Cir. 2015).

Defendants argue plaintiff was not qualified for the positions to which he applied. Specifically, defendants argue plaintiff was not rehired due to his failure to appropriately complete applications for the open positions, and not for a race based reason. While this argument may bear out on summary judgment,

14

based on the allegations of plaintiff's complaint he has stated a claim for disparate treatment in failing to rehire him. The defendants have not shown in what manner plaintiff filled out the application incorrectly or how that affected his qualification for the job. Plaintiff has alleged that he applied for four open positions (the same or similar to jobs he held previously) and that he was rejected although he was qualified and less-qualified all white men were hired instead. Therefore, defendants' motion to dismiss plaintiff's Fourteenth Amendment claim under the equal protection clause for failure to re-hire is DENIED.

### III. 42 U.S.C. § 1986 Claim

Plaintiff alleges defendants neglected to prevent racially-based adverse employment action by failing to take any preventative, corrective, or disciplinary actions against employees known to be engaging in racially discriminatory employment practices; and knowingly turning a blind eye to the defendants' discriminatory employment practices and imposition of disparate disciplinary sanctions against plaintiff based on the impermissible consideration of his race. [DE #1 at ¶58].

To state a claim under 42 U.S.C. § 1986 for neglecting to prevent a civil conspiracy, a plaintiff must first state a claim for civil conspiracy under 42 U.S.C. § 1985. Starnes v. Veeder-Root, 1:15-CV-1002, 2017 WL 913633, at *13 (M.D.N.C. March 7, 2017)

15

(citing Clark v. Clabaugh, 20 F.3d 1290, 1295 n.5 (3d. Cir. 1994)). The pleading requirements for a Section 1985 claim are stringent. Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). To state a claim of a civil conspiracy, a plaintiff must allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connections with the conspiracy.

Thomas v. The Salvation Army Southern Territory, 841 F.3d 632, 637 (4th Cir. 2016) (quoting Simmons, 47 F.3d at 1376)). "Allegations of 'parallel conduct and a bare assertion of conspiracy' are not enough for a claim to proceed." Id. (quoting A Soc'y Without A Name v. Virginia, 655 F.3d 342, 347 (4th Cir. 2011)).

Although plaintiff alleges Defendant Hardy failed to prevent adverse employment action, plaintiff has not stated a plausible claim for a conspiracy. While plaintiff alleges his supervisor Defendant Hollis had evaluated him positively in the past, plaintiff does not allege that Defendants Hollis, Lewis, and Hardy conspired to terminate him.

Finding plaintiff has not stated a claim sufficient to support a Section 1985 civil conspiracy as a basis for a Section 1986 violation, defendants' motion to dismiss plaintiff's Section 1986 claim is GRANTED.

16

## IV. State Law Claims

### a. Defamation and the Statute of Limitations

To state a claim of defamation, a plaintiff must allege the following four elements: "[1] defendant[s] made false, defamatory statements, [2] of or concerning the plaintiff, [3] which were published to a third person, [4] causing injury to the plaintiff's reputation." Tyson v. L'Eggs Products, Inc., 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (N.C. Ct. App. 1987) (citing Hall v. Publ'g Co., 46 N.C. App. 760, 266 S.E.2d 397 (1980)).

Defendants move to dismiss plaintiff's claim for defamation as barred by the statute of limitations, which is one year in North Carolina. N.C. Gen. Stat. § 1-54(3). Here, plaintiff has failed to state a claim because his complaint neither alleges specific defamatory statements nor alleges publication to a third party. Even if plaintiff had alleged such statements as the basis for the defamation claim, presuming the statements were made at or around the time of termination, August 2014, or at the latest near plaintiff's last application to the department, September 22, 2015, the complaint was not filed until September 30, 2016, more than one year later. Therefore, plaintiff's defamation claim is barred by the statute of limitations and fails to state a claim. Defendants' motion to dismiss the defamation claim is GRANTED.

### b. Wrongful Discharge

"When an employee has no definite term of employment, he is an employee at will and may be discharged without any reason." Gillis v. Montgomery Cty. Sheriff's Dept., 191 N.C. App. 377, 379-80, 663 S.E.2d 447, 449 (N.C. Ct. App. 2008) (citing Coman v. Thomas Mfg. Co., 325 N.C. 172, 175, 381 S.E.2d 445, 446 (1989)). However, "[a]n employer wrongfully discharges an at-will employee if the termination is done for 'an unlawful reason or purpose that contravenes public policy." Garner v. Retenbach Constructors, Inc., 350 N.C. 567, 571, 515 S.E.2d 438, 441 (N.C. 1999) (emphasis removed) (quoting Sides v. Duke Univ., 74 N.C. App. 331, 342, 328 S.E.2d 818, 826 (N.C. Ct. App. 1985) (disapproved on other grounds by Kurtzman, 493 S.E.2d at 421-22)).

Defendants move to dismiss plaintiff's wrongful discharge claim, arguing that a violation of CSERA is not a violation of public policy, and therefore as an at-will employee he cannot bring a wrongful discharge claim alleging a CSERA violation as the underlying violation of public policy. While the court in Garner found a violation of CSERA was not a violation of public policy under the facts therein, Garner, 515 S.E.2d at 572, this court need not reach this issue, as plaintiff's wrongful discharge claim is broader than a technical CSERA violation, alleging his termination was also motivated by racial discrimination.

Therefore, defendants' motion to dismiss the claim of wrongful discharge[8] is hereby DENIED.

### c. Public Official Immunity

Defendants move to dismiss the "claims against the individual defendants" based on public official immunity. However, defendants fail to delineate to which defendants and to which claims such immunity is applicable. Without proper support, such argument cannot be considered by the court.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, [DE #20], is GRANTED IN PART AND DENIED IN PART.

The following claims are DISMISSED:

1) Plaintiff's § 1983 Claim under the First and Fifth Amendment;

2) Plaintiff's § 1983 Claim for violation of the Fourteenth Amendment Due Process Clause for Deprivation of Property Interest;

3) Plaintiff's § 1986 Claim; and

4) Plaintiff's North Carolina Defamation Claim.

---

[8] The court notes plaintiff's claim of wrongful discharge is far from a model of clarity, not being set out as a separate section of the complaint but rather seemingly interspersed through various paragraphs. The court has broadly construed the complaint as a whole in its analysis.

The following claims remain before the court:

1) Plaintiff's § 1983 Claim for violation of the Fourth Amendment;

2) Plaintiff's § 1983 Claim for violation of the Fourteenth Amendment Due Process Clause for Deprivation of Liberty Interest;

3) Plaintiff's § 1983 Claim for violation of the Fourteenth Amendment Equal Protection Clause;

4) Plaintiff's North Carolina Invasion of Privacy Claim;

5) Plaintiff's North Carolina Negligent Training and Supervision Claim Against Defendant Hardy, in her individual and official capacity; and

6) Plaintiff's Wrongful Discharge Claim.

This matter remains scheduled for a non-final pretrial conference before United States Magistrate Judge Kimberly A. Swank at 11:30 AM on April 17, 2018 at the United States Courthouse Annex in Greenville, North Carolina.

This **26** day of March 2018.

MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
#35