IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO.: 7:16-CV-340-H

PRESTON DWIGHT DAVIS,                    )
                                         )
        Plaintiff,                       )
                                         )
                                         )
        v.                               )
                                         )
                                         )
STEPHANIE LEWIS,                         )
individually and in her                  )
official capacity as the                 )
Director of Brunswick                    )
County's Operation Services              )          **ORDER**
Department, BRYAN HOLLIS,                 )
individually and in his                  )
official capacity as the                 )
plaintiff's direct                       )
supervisor, ANN HARDY,                   )
individually and in her                  )
official capacity as County              )
Manager for Brunswick                    )
County, North Carolina, and              )
BRUNSWICK COUNTY, NORTH                   )
CAROLINA,                                 )
                                         )
        Defendants.                      )


        This matter is before the court on defendants' motion for

summary judgment, [DE #64].  Plaintiff has responded, [DE #87].

Plaintiff has also filed a motion to exclude expert witness, [DE

#86], to which defendants have responded, [DE #88].  Plaintiff

additionally filed a response to defendants' Statement of Material

Facts, [DE #89], to which defendants responded with a motion to strike, [DE #90]. This matter is ripe for adjudication.

**PROCEDURAL HISTORY**

Plaintiff filed the complaint in this matter on September 30, 2016, alleging violations of his constitutional rights as well as violations of state law surrounding his being selected for drug testing, being asked to resign in lieu of being terminated, and his failure to be re-hired. By order filed March 26, 2018, this court granted in part and denied in part defendants' motion to dismiss, leaving the following claims by plaintiff for adjudication by the court:

1) Section 1983 Claim for violation of the Fourth Amendment;

2) Section 1983 Claim for violation of the Fourteenth Amendment Due Process Clause for Deprivation of Liberty Interest;

3) Section 1983 Claim for violation of the Fourteenth Amendment Equal Protection Clause;

4) North Carolina Invasion of Privacy Claim;

5) North Carolina Negligent Training and Supervision Claim Against Defendant Hardy, in her individual and official capacities; and

6) Wrongful Discharge[1] Claim.

_____

[1] As noted in this court's order on the motion to dismiss, the court notes plaintiff's claim of wrongful discharge is far from a model of clarity, not being set out as a separate section of the complaint but rather seemingly interspersed through various paragraphs. The court has broadly construed the complaint as a whole in its analysis. Defendants move for summary judgment as to plaintiff's wrongful discharge claim as well, referring to it as "latent." [DE #66 at 1].

Defendants now move for summary judgment as to all claims. [DE #64 at 1].

## STATEMENT OF THE FACTS

Plaintiff, an African-American male, began working for defendant Brunswick County, North Carolina ("the County") in the Operation Services Department ("OSD") as an Equipment Operator II in 1988. [DE #1 ¶29]. A Commercial Driver's License ("CDL") was a requirement of the position of Equipment Operator II, and plaintiff held such a license.[2] [DE #68 at 22, 32]. In 1992, plaintiff was convicted of Driving While Impaired ("DWI"). He lost his CDL license for a year and was terminated by the County. Id. at 19–20, 23. After working for several private companies, plaintiff was rehired by the County in 2000. Id. at 22–23.

On January 10, 2011, plaintiff was charged with a second DWI, but was ultimately not convicted. As a result of the charge, he lost his CDL license, at least temporarily. The County chose not to terminate plaintiff, but rather demoted him to a position that did not require a CDL license, namely a Maintenance Assistant I which involved a salary cut of $3,500.00. [DE #1 ¶40]. Plaintiff additionally was referred to the County's employee assistance program and agreed to periodic drug and

_____

[2] Plaintiff first obtained his CDL in 1988. [DE #68 at 22].

alcohol testing for the next 12 months.  [DE #68 at 35].

After reinstatement of his CDL license, plaintiff applied for an open Equipment Operator II position [DE #68 at 38].  After interviewing with defendant Bryan Hollis, plaintiff was re-hired as an Equipment Operator II in approximately 2012.  [DE #68 at 38-39].  During his employment with the County, plaintiff's supervisors consistently rated his job performance as "meets or exceeds standards."  [DE #1 at ¶15]. In fact, plaintiff received a 2% merit-based pay raise approximately two weeks before his termination.  Id. ¶¶15, 32.

On July 21, 2014, plaintiff was tested for drug use. Plaintiff admitted in his deposition that as a CDL holder in 2014 he was subject to random drug testing by the County.  [DE #68 at 39-43].   After plaintiff's sample tested positive for a controlled substance, plaintiff was given the option to resign rather than be terminated for cause.  Plaintiff chose to resign on August 15, 2014.  [DE #68 at 72, 80].

Following plaintiff's resignation in lieu of termination, plaintiff applied for the position of Equipment Operator II with the County, a position requiring a CDL, and was denied at least four separate times.  P l a i n t i f f   a l l e g e s defendants Hollis and Lewis, with defendant Hardy's approval,

selected all white males to fill all four of the open Equipment Operator II positions, who were objectively less qualified than plaintiff.   [DE #1 ¶¶32, 35, and 39].

On October 9, 2014, plaintiff met with Defendant Hardy, the County Manager, to discuss his not being rehired and their alleged discriminatory employment practices.   Id. ¶41.   However, plaintiff c l a i m s he was qualified to be rehired and that Defendant Hardy failed to investigate or take any corrective measures in response to plaintiff's raising his concerns to her.

<b><u>COURT'S DISCUSSION</u></b>

I.   **Plaintiff's Motion to Strike Expert Testimony, [DE #86]**

Plaintiff has moved to strike expert testimony of proposed expert Reginald R. Hines.   It is unclear whether plaintiff seeks to strike the entire report or simply limit the testimony of the expert.   However, as the court did not rely on any legal conclusions within the expert report in reaching its conclusion on the motion for summary judgment, the motion to strike is DENIED AS MOOT.

II.   **Defendants' Motion to Strike Plaintiff's Response to Statement of Material Facts, [DE #90]**

Defendants have moved to strike plaintiff's response to defendants' statement of material facts, arguing plaintiff responded outside the permissible time frame and without

requesting permission.  [DE #90].  While plaintiff technically responded outside the permissible window, the court notes plaintiff did file a motion for extension of time on October 12, 2018, to "serve and file a response to defendants' motion [for summary judgment]." [DE #85].  This extension request was granted due to two major storms that impacted eastern North Carolina in September and October 2018, on the basis of "excusable neglect" pursuant to Fed. R. Civ. P. 6(b)(1)(B).  [DE #94].  Plaintiff's response, [DE #87], filed October 12, 2018, was deemed timely. Plaintiff's response to the statement of material facts [DE #89] was filed just three days later on October 15, 2018.  As a response to statement of material facts is expected to be filed with the response to the motion for summary judgment, the court construes this document to be implicitly included in plaintiff's October 12, 2018 extension request.  Thus, plaintiff's response to the statement of material facts, [DE #89], is deemed timely and defendants' motion to strike, [DE #90], is DENIED.

## III. Standard of Review on Motion for Summary Judgment

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the initial

6

burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249 (citing First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-91 (1968)).

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 248. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. Faircloth, 837 F. Supp. at 125 (citing Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir.

7

1985)). Furthermore, a mere scintilla of evidence supporting the case is not enough. <u>Anderson</u>, 477 U.S. at 252.

The court notes in this case plaintiff filed a verified complaint. "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991) (citing <u>Davis v. Zahradnick</u>, 600 F.2d 458, 459-60 (4th Cir. 1979)). "Therefore, a verified complaint that alleges facts that are made on belief or information and belief is insufficient to oppose summary judgment." <u>Walker v. Tyler Cty. Comm'n</u>, 11 Fed. App'x. 270, 274 (4th Cir. June 4, 2001) (unpublished) (citing Fed. R. Civ. P. 56(e); <u>Causey v. Balog</u>, 162 F.3d 795, 803 n. 4 (4th Cir. 1998); 10B Charles Allen Wright et al., <u>Federal Practice and Procedure</u> § 2738 at 350-56 (1998)).

### A. § 1983 Claim for Violation of Fourth Amendment

Plaintiff claims his Fourth Amendment right to be free from unreasonable searches and seizures was violated when he was subjected to a warrantless search, absent individualized suspicion, in the form of a urine drug test in alleged violation of 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144

8

n.3 (1979)).

The Fourth Amendment provides:

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

A urine drug test is a search. Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 617 (1989). While generally, a search must be supported by a warrant issued upon probable cause, "neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance." Nat'l Treasury Emps. Union v. Von Raab, 489 U.S. 656, 665 (1989) (internal citations omitted). As the Supreme Court found in Von Raab, "[b]ecause the [employer] does not make a discretionary determination to search based on a judgment that certain conditions are present, there are simply 'no special facts for a neutral magistrate to evaluate.'" Id. at 667 (citing South Dakota v. Opperman, 428 U.S. 364, 383 (1976) (Powell, J., concurring)). "Therefore, in the context of safety and administrative regulations, a search unsupported by probable cause may be reasonable 'when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement

impracticable."'" Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls, 536 U.S. 822, 829 (2002) (quoting Griffin v. Wisconsin, 483 U.S. 868, 873 (1987)) (citing Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 653 (1995); Skinner, 489 U.S. at 619)). Whether a search is reasonable under the Fourth Amendment is determined by balancing the "intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Skinner, 489 U.S. at 619 (quoting Delaware v. Prouse, 440 U.S. 648, 654 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)).

Plaintiff was selected for testing as mandated by the Omnibus Transportation Employee Testing Act of 1991 ("OTETA"), 49 U.S.C. § 31306 et seq, which provides, in relevant part,

> In the interest of commercial motor vehicle safety, the Secretary of Transportation shall prescribe regulations that establish a program requiring motor carriers to conduct pre-employment, reasonable suspicion, random, and post-accident testing of operators of commercial motor vehicles for the use of a controlled substance in violation of law or a United States Government regulation.

49 U.S.C. § 31306(b)(1)(A).

Defendant Brunswick County is an "employer" under OTETA. See 49 U.S.C. § 31301(8) (defining "employer" as "a person (including the United States Government, a State, or a political subdivision of a State) that owns or leases a commercial motor vehicle or assigns employees to operate a commercial motor

vehicle."). For purposes of the statute, plaintiff, as a CDL holder and Equipment Operator II, who operated heavy equipment weighing at least 26,001 pounds approximately five to six hours per work day, [DE #68 Dep. Davis at 23-27, 31], is an "employee" who operates a commercial motor vehicle, employed by an employer. 49 U.S.C. § 31301(7); 49 U.S.C. § 31301(4) (defining a "commercial motor vehicle" as any motor vehicle weighing at least 26,001 pounds, or is designed to transport at least 16 passengers, or is used to transport hazardous waste); see also 49 C.F.R. § 40.3 (defining "employee" including "individuals currently performing safety-sensitive functions designated in DOT agency regulations . . . .").

The regulations promulgated pursuant to OTETA are found in relevant part at 49 C.F.R. Parts 40 (regulating drug and alcohol screening administration and procedures) and 382 (applying drug and alcohol screening requirements to commercial motor vehicle drivers and employers).[3] Part 40 applies to "safety-sensitive transportation employees," and Part 382.105 makes applicable Part 40's provisions addressing alcohol or controlled substances

---

[3] Part 40 provides "[t]his part tells all parties who conduct drug and alcohol tests required by Department of Transportation (DOT) agency regulations how to conduct these tests and what procedures to use." 49 C.F.R. § 40.1(a). It also provides "[t]his part concerns the activities of transportation employers, safety-sensitive transportation employees (including self-employed individuals, contractors and volunteers as covered by DOT agency regulations), and service agents." 49 C.F.R. § 40.1(b). The second part of § 382.105 provides "[t]he provisions of part 40 of this title that address alcohol or controlled substances testing are made applicable to employers by this part." 49 C.F.R. § 382.105.

testing.  49 C.F.R. § 382.105.

Plaintiff operated commercial motor vehicles approximately five to six hours per day. [DE #68 Dep. Davis at 27]. Therefore, plaintiff, as an Equipment Operator II with the County and by virtue of holding a CDL and being a "driver"[4] in control of vehicles classified as commercial motor vehicles, was an "employee" and a "driver" in a "safety-sensitive function"[5] at the time of testing. See 49 C.F.R. § 382.107.

The regulations require random alcohol and controlled substance testing, 49 C.F.R. § 382.305(a), and specify the procedures for such testing, including requirements for randomized and unannounced testing. 49 C.F.R. § 382.305(k)(1).

According to the affidavit of Melanie Turrise, the Human Resources Director for Brunswick County, random selection in accordance with the regulations occurred in this search. "The County does not select the individual or individuals that are chosen for a random drug test on a particular day." [DE #68

---

[4] A "driver" is "any person who operates a commercial motor vehicle. This includes, but is not limited to: Full time, regularly employed drivers; casual, intermittent or occasional drivers; leased drivers and independent owner-operator contractors." 49 C.F.R. § 382.107.
[5] "Safety-sensitive function means all time from the time a driver begins to work or is required to be in readiness to work until the time he/she is relieved from work and all responsibility for performing work." 49 C.F.R. § 382.107. "Safety-sensitive functions shall include: … [a]ll time, other than driving time, in or upon any commercial motor vehicle except time spent resting in a sleeper berth (a berth conforming to the requirements of § 393.76 of this subchapter)." Id. Thus, "safety-sensitive" functions include "[a]ll time, in or upon any commercial motor vehicle, other than time spent resting in a sleeper berth." Id.

12

Affidavit of Melanie Turrise ¶6]. "The third party administrator selected employees from an aggregate pool of CDL holders of all employers using their service through the use of a random selection computer algorithm." Id. ¶7.

Plaintiff contends the OTETA regulations do not apply to him as plaintiff was not engaged in "commerce" as defined in the regulations at 49 U.S.C. § 31301(2)(A)&(B), and therefore that plaintiff's selection was based upon his race. However, the court finds that the definition of "commerce" is satisfied by the work of plaintiff as a heavy equipment operator employed with OSD of the County as the County was involved in the "trade, traffic, and transportation - in the United States that affects trade, traffic, and transportation described in subclause (A) of this clause."[6] 49 U.S.C. § 31301(2)(B). Therefore, the requirements of OTETA apply. Further, while plaintiff alleges the testing was not random, he has brought forth no facts supporting this allegation or disputing the affidavit cited by defendants. Therefore, the court finds plaintiff was randomly selected for testing.

Additionally, the OTETA regulations at 49 C.F.R. § 40 set

---

[6] "Commerce" means "trade, traffic, and transportation-- (A) in the jurisdiction of the United States between a place in a State and a place outside that State (including a place outside the United States); or (B) in the United States that affects trade, traffic, and transportation described in subclause (A)… ." 49 U.S.C. § 31301(2)(A)&(B).

out extensive protections for the privacy, conduct of testing and verification, preservation, notice, and post-test review. Among other things, the regulations require that each specimen be split, with testing conducted on one "split" of the specimen and the other split being preserved for retesting if requested by the employee. 49 C.F.R. §§ 40.3; 40.71(b). A party receiving a verified positive test has 72 hours from the time of notice to request a test of the split specimen. 49 C.F.R. § 40.171(a). Plaintiff was offered and specifically refused a test of the second split prior to his resignation. [DE #66 at 6 citing DE #68 Davis Dep. at 47-53].

Under Skinner and Von Raab, "random drug tests do not violate the Fourth Amendment in limited circumstances where important governmental interests outweigh individuals' expectations of privacy." Thomson v. Marsh, 884 F.2d 113, 114-15 (4th Cir. 1989). Similarly, in Carroll v. City of Westminster, 233 F.3d 208, 211 (4th Cir. 2000), the Fourth Circuit cited the state's compelling interest in ensuring that armed officers who "discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences" are not suffering from impaired perceptions and judgment as the result of the use of alcohol or controlled substances in upholding a drug screening of a police officer.

14

In the instant matter, as in Carroll, "the government's interests are not just legitimate, they are 'compelling.'" Carroll, 233 F.3d at 211 (citing Von Raab, 489 U.S. at 670). The government has a compelling interest in ensuring that the judgment of persons working in safety-sensitive functions are not impaired by illegal narcotics.

Further, employees such as plaintiff have a diminished expectation of privacy due to their choice to participate in "regulated industries," such as transportation and law enforcement. See Skinner, 489 U.S. at 620 (the government's interest in safety presents special needs that may "justify departures from the usual warrant and probable-cause requirements."). CDL holders are participants in just such a closely regulated industry, one where the regulations in question are motivated by the same public safety concerns behind the regulations upheld in Skinner.

Therefore, as the governmental interest in ensuring safety among CDL holders outweighs the individual's privacy interest in the context of a random drug search pursuant to the requirements of OTETA, the search was not unreasonable, and the defendants' motion for summary judgment on plaintiff's Fourth Amendment claim is GRANTED.

## B. § 1983 Claim for Violation of Fourteenth Amendment

Plaintiff claims his Fourteenth Amendment right to equal protection was violated, arguing he was selected for controlled substance testing on the basis of race; forced to resign on the basis of race; and finally, was not rehired because of his race.

### i.    Standard of Review

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). "If he makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" Veney v. Wyche, 293 F.3d 726, 731 (4th Cir. 2002) (citing Morrison, 239 F.3d at 654).

### ii.    Selection for Drug Testing

Plaintiff, as aforementioned, at the time of his selection for drug testing, was an African-American male CDL holder, employed by the County as an Equipment Operator II.  [DE #67 and DE #89]. Plaintiff was randomly selected, as held *supra*, for the purpose of drug testing as a requirement pursuant to OTETA as a CDL holder. Although plaintiff argues his selection was not "random," he has not presented evidence to support this assertion.   Defendants

utilized a third-party administrator to conduct random drug testing. [DE #68 Affidavit of Melanie Turrise ¶¶ 2, 3, 4]. At the time of plaintiff's selection, the third-party administrator was Workforce Integrity Network ("WIN"), which used a random selection computer algorithm for selection of employees from a pool of CDL holders. Id. at ¶4. The selection process, by its random nature, involved no direct selection of the employer other than the employer submitting the names of CDL holders to the third-party administrator for use in the computer algorithm. Having found the testing selection to be random, plaintiff cannot show he was selected for testing based on his race.

    iii. McDonnell Douglas Framework

An employer charged with discrimination is entitled to summary judgment if the plaintiff fails to establish a prima facie case or fails to raise a factual dispute regarding the reasons the employer proffers for the alleged discriminatory act. See Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). Furthermore, "the mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. (citing E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 944 (4th Cir. 1992). In Title VII cases, a plaintiff may make out a prima facie case by proffering direct evidence of discrimination or indirect evidence "whose cumulative probative

force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference that but for the plaintiff's [protected status or activity]," the defendant would not have taken the adverse employment action. Holmes v. Bevilacqua, 794 F.2d 142, 146 (4th Cir. 1986). In the absence of such evidence, a plaintiff must resort to the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973), presumption framework. Claims of discrimination under §§ 1981 and 1983 are analyzed under the same framework as claims pursuant to Title VII of the Civil Rights Act of 1964. Gairola v. Va. Dept. of Gen. Servs., 753 F.2d 1281, 1285-86 (4th Cir. 1985); See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 n.1 (1993) ("Neither side challenges that proposition, and we shall assume that the McDonnell Douglas framework is fully applicable to racial-discrimination-in-employment claims under 42 U.S.C. § 1983.").

Under McDonnell Douglas, a plaintiff faced with a motion for summary judgment must first establish a prima facie case of unfair treatment by a preponderance of the evidence. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Henson, 61 F.3d at 274. A prima facie case requires plaintiff to show facts from which a nexus can be inferred between the alleged adverse action and the plaintiff's protected status or conduct. Holder v. City of Raleigh, 867 F.2d 823, 826 (4th Cir. 1989). If the plaintiff establishes a

prima facie case, then an inference of discrimination arises. See Henson, 61 F.3d at 274.

The defendant then can offer legitimate, nondiscriminatory explanations for the allegedly discriminatory acts. See McDonnell Douglas, 411 U.S. at 802. The employer's burden is one of production, not of persuasion; therefore, the employer is not required to prove the absence of discriminatory motive. See Henson, 61 F.3d at 274-75. The plaintiff then bears the "ultimate burden of persuasion" and must show by a preponderance of the evidence that the defendant's explanations are merely a pretext for discrimination or otherwise are not worthy of credence. Id. at 275. It is not enough for the plaintiff to merely prove the falsity of the employer's explanations. However, it is permissible to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000).

iv. Termination

To establish a prima facie case of race discrimination, plaintiff must show (1) he was a member of the protected class, (2) he was performing his job satisfactorily, (3) he suffered an adverse employment action and (4) he was treated differently from similarly situated employees outside the protected class. Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BRI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

Plaintiff has failed to state a prima facie case. Here, plaintiff was a member of the protected class and he did suffer an adverse employment action, namely being asked to resign in lieu of termination. However, he cannot show he was performing his job satisfactorily, as his positive drug test puts his CDL license in jeopardy, a license required by his position. Further, even assuming he was performing his job satisfactorily, he has not shown, as detailed below, that he was treated differently from similarly situated employees outside the protected class.

Plaintiff contends that a white male employee was arrested for possession of controlled substances and allowed to retire with full benefits rather than being terminated. [DE #1 ¶ 26]. However, that employee was not a CDL holder working in a "safety-sensitive" position.[7]

Second, plaintiff contends he was similarly situated to a white male employee who was a mechanic with OSD who was found in possession of cocaine at the workplace and tested positive for cocaine. Plaintiff contends this employee was allowed to participate in drug treatment and return to work at his same

---

[7] The employee also had enough years of creditable service to qualify for retirement. [DE #67 ¶ 21]. Although plaintiff contends he had over twenty years of credible service at the time of his termination, [DE #89 at 1, 9], he also contends he was an 18-year Brunswick County employee, [DE #1 ¶16 and DE #87 at 2, 4, 5, 6, 13, 15, 21, 22]. Whether plaintiff was eligible for retirement is disputed, but it is not a material issue of fact because plaintiff, as a CDL holder operating heavy equipment is not similarly situated to the county attorney, about whom no evidence has been presented that he was a CDL holder or working in a safety-sensitive function.

position and salary while plaintiff was terminated. [DE #87 at 23]. However, in addition to there being no evidence that this particular employee was in a position requiring a CDL, he is not similarly situated to plaintiff because the evidence shows plaintiff had a previous history of DWI charges and at least one conviction and had already participated in at least one substance abuse treatment program.

Finally, plaintiff contends he was similarly situated to a white male who was employed as a building inspector with the County's Code Enforcement Division and was caught using cocaine while "on-duty," and additionally was discovered with cocaine in his county vehicle. [DE #87 at 23]. Plaintiff alleges this employee was permitted to enter drug treatment a second time and return to work. [DE #87 at 23 and DE #68 Dep. Davis at 92-93]. However, there is no evidence that this employee was a CDL holder, and therefore he is not "similarly situated" with plaintiff.

Therefore, plaintiff has not presented evidence that he was treated differently from similarly situated individuals and has failed to make a prima facie case.

v.    Failure to Re-hire

To establish a prima face case of failure to rehire, plaintiff must show "(1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the

21

position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998) (citing McDonnell Douglas, 411 U.S. at 802; Alvarado v. Board of Trustees of Montgomery Cmty. Coll., 928 F.2d 118, 121 (4th Cir. 1991)).

Plaintiff, as an African-American, was a member of the protected class, he applied for the position in question, and was qualified for the position. However, it is questionable whether he has shown that he was rejected under circumstances giving rise to an inference of unlawful discrimination as the facts show he had been previously asked to resign because of a positive drug test. However, even assuming plaintiff can make out a prima facie case, defendants have articulated a legitimate, non-discriminatory reason for not rehiring plaintiff: defendants found plaintiff's claim that he had tested positive for cocaine as the result of exposure to second-hand smoke to be incredible, unreasonable, and concerning, and they believed the likelihood of dishonesty and/or denial about an underlying drug issue placed the County in an untenable position, particularly given that the positive test was not plaintiff's first issue with substance abuse. [DE #66 at 16 and DE #68 Affidavit of Ann Hardy at ¶¶ 3, 4, and 5].

Having offered a legitimate, non-discriminatory reason, the burden shifts back to plaintiff to show this reason is pretextual

for a discriminatory reason. Factors to consider in terms of establishing pretext include facts as to the employer's treatment of employee during his prior term of employment; employer's reaction, if any, to employee's legitimate civil rights activities; and employer's general policy and practice with respect to minority employment. McDonnell Douglas, 411 U.S. at 804-05. While the racial composition of the workforce is a factor to consider in determining whether the employer uses exclusionary practices, such considerations "may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to rehire." Id. at 805 n. 19.

As evidence of pretext, plaintiff argues that subsequent to his termination, all of the OSD's open Equipment Operator II positions, including plaintiff's former position, were filled by less qualified white males hired from outside the Brunswick County Government. Plaintiff also alleges there has never been an African-American supervisor with OSD. [DE #87 at 24]. Further, plaintiff argues while he was employed with OSD, he was the only African-American in the department. Id. However, the facts also show that plaintiff, an African-American male, was employed by the County for many years and enjoyed high reviews and a merit raise while employed. Plaintiff makes some other arguments in his response that are not supported by attached affidavit or other

23

supporting evidence before this court.[8]   Furthermore, plaintiff

notes some of the interview forms for the applicants record the

race and sex of the applicants, while others do not.  The interview

sheets that recorded race and sex were marked for white race and

male sex.   [DE #87 at 49, 50].   However, there has been no

explanation as to how or why such data was collected.  A review of

the sheets shows Mr. Davis is not listed on those interview sheets.

The court finds plaintiff has not stated a prima facie case

of failure to rehire, and even assuming he has stated a prima facie

case, defendants have articulated a legitimate, nondiscriminatory

reason for the decision not to rehire him, and plaintiff has failed

to show that reason was pretextual for a discriminatory purpose.

Therefore, plaintiff's failure to rehire claim fails.

In sum, defendant's motion for summary judgment as to

plaintiff's § 1983 claim for violation of the Fourteenth Amendment

is hereby GRANTED.

## C.   **Violation of Procedural Due Process by Deprivation of Liberty Interest**

In the prior order, the court noted plaintiff, under a liberal

reading of the complaint, also appears to attempt to state a claim

for a deprivation of his liberty interest without due process in

violation of the Fourteenth Amendment. [DE #1 at ¶¶ 55, 58].

---

[8] The court is referencing the statements of Mr. Burnest Hewett referenced in
the plaintiff's response. While the response references an affidavit, there was
no such affidavit submitted to the court.

Defendants move for summary judgment on all claims. Plaintiff has presented no argument or evidence to support such a claim, therefore, defendant's motion for summary judgment as to plaintiff's procedural due process claim is GRANTED.

D. **North Carolina Invasion of Privacy; Negligent Training and Supervision against Defendant Hardy, in her individual capacity; North Carolina Wrongful Discharge**

    i.  Sovereign Immunity with Regard to State Law Claims

Defendants argue the state law claims are precluded by the doctrine of sovereign immunity. [DE #66 at 21-22]. "Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity." Meyer v. Walls, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997) (citing Gammons v. N.C. Dep't of Human Res., 344 N.C. 51, 54, 472 S.E.2d 722, 723 (1996)). However, plaintiff's claims are against Brunswick County and Brunswick County officials. Defendants have failed to show that such immunity extends to the county and its officials. While plaintiff responds with argument regarding governmental immunity, defendant have not raised such argument or shown how any immunity is applicable to the defendants herein. Therefore, defendants have not shown they are entitled to immunity.

    ii.  Claim Analysis

Defendants move for summary judgment on plaintiff's North Carolina Invasion of Privacy claim, [DE #1 at ¶¶ 71-76]; North

Carolina Negligent Training and Supervision claim against Defendant Hardy in her individual capacity, [DE #1 at ¶¶ 77-81]; and North Carolina wrongful discharge claim, [DE #1 at ¶¶ 19, 23, 48], as pled in the verified complaint. However, plaintiff has not responded with additional evidence in his response to defendants' motion for summary judgment on these state law claims. Federal Rule of Civil Procedure 56(e) provides "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. Pro. 56(e)(3).

Plaintiff's allegations in the verified complaint are insufficient to oppose summary judgment on these three claims as the allegations are not based on personal knowledge but are rather chiefly legal conclusions.

As to the invasion of privacy, plaintiff alleges the drug test lacked reasonable suspicion. However, the court has already thoroughly addressed the applicability of federal statutes and regulations to plaintiff's position, requiring random, suspicionless searches, i.e., drug tests.

As to Negligent Supervision and Training, plaintiff alleges Defendant Hardy breached her duty "to exercise care in training

and supervising Defendants Lewis and Hollis and others on excluding race as a factor in making tangible employment decisions." [DE #1 ¶79]. As discussed supra, defendants did not select plaintiff for testing for a race-based reason but rather randomly using a computer algorithm; defendants terminated plaintiff for his positive drug test; and defendants failed to rehire plaintiff for his positive drug test in what they considered was in the County's best interest. Plaintiff has brought forth no other facts supporting this claims.

Finally, plaintiff alleges his wrongful discharge was based upon violations of the Controlled Substance Examination Regulation Act ("CSERA") and for racially discriminatory reasons. To the extent plaintiff argues his wrongful discharge claim is based upon violations of CSERA, the court notes that CSERA provides that drug tests pursuant to 49 C.F.R. § 382 of OTETEA regulations are not subject to CSERA. See N.C. Gen. Stat. § 95-235 ("The provisions of this Article shall not apply to a controlled substance examination required by the United States Department of Transportation or the United States Nuclear Regulatory Commission."). Plaintiff's controlled substance examination was required by the United States Department of Transportation as provided for in OTETA for CDL holders. See discussion supra. Therefore, violations of CSERA cannot serve as a basis for plaintiff's wrongful termination claim. Further, the court has

already found plaintiff has not shown racial discrimination in his testing, termination, or failure to be rehired. Therefore, plaintiff has not shown a claim for wrongful discharge in violation of North Carolina public policy.

Therefore, finding that plaintiff has failed to set forth specific facts showing there is a genuine issue for trial on these claims as required by Rule 56(e) of the Federal Rules of Civil Procedure, defendants' motion for summary judgment as to plaintiff's North Carolina claims is GRANTED.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment, [DE #64], is GRANTED. Plaintiff's motion to exclude expert testimony of Reginald R. Hines, [DE #86], is DENIED AS MOOT. Defendants' motion to strike plaintiff's response to the statement of materials facts at DE #89, [DE #90], is DENIED. The clerk is directed to close this case.

This **22nd** day of March 2019.

Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#35